IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CROSBY VALVE, LLC, AS SUCCESSOR )
TO CROSBY VALVE, INC. )
)
)
Plaintiff, )
)
)
)
v. )
)
) **Civil Action No.:** _____
)
FMC CORPORATION )
)
Defendant. )
)
)

## COMPLAINT

Plaintiff Crosby Valve, LLC, by its attorneys, for its Complaint against FMC Corporation alleges as follows:

### PARTIES

1. Crosby Valve, LLC is a limited liability company organized under the laws of the State of Nevada that maintains its principal place of business in Minnesota. Crosby Valve, LLC is the successor-in-interest to Crosby Valve, Inc. and both are referred to herein as "Crosby Valve." Crosby Valve is in the business of manufacturing and selling pressure relieving and other valves. Its sole member is The J. R. Clarkson Company, LLC, which is a limited liability company organized under the laws of the State of Nevada that maintains its principal place of business in Houston, Texas. The sole member of The J. R. Clarkson Company, LLC is Pentair Valves & Controls, Inc., a Texas corporation that maintains its principal place of business in Houston, Texas.

2. FMC Corporation ("FMC") is a Delaware corporation that maintains its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that Crosby Valve and FMC are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that FMC resides in this district pursuant to 28 U.S.C. §1391(c). Moreover, FMC expressly consented to jurisdiction and venue in this Court in the Merger Agreement (defined below) that is the subject of this action.

5. This Court has jurisdiction and authority to render the declaratory relief required herein pursuant to 28 U.S.C. § 2201. There is a present and actual controversy between Crosby Valve and FMC with respect to the parties' rights and obligations under the Merger Agreement.

## BACKGROUND ALLEGATIONS

6. Crosby Valve's products are alleged to have at one time contained asbestos. As a result, Crosby Valve has been exposed to a large number of claims and lawsuits asserting that it is liable to individuals who contend that they are suffering from asbestos-related personal injuries.

7. FMC sold its Crosby Valve subsidiary to Tyco International Ltd. ("TIL") in 1998. In order to persuade TIL to acquire a company that faced substantial asbestos-related exposure, FMC agreed to defend and indemnify both Tyco and its affiliates (including Crosby Valve) against certain asbestos personal injury claims from Crosby Valve

products. The manifest intent of this indemnity was to enable TIL to acquire Crosby Valve free and clear of any historical asbestos liabilities.

8. For the next 14 years, FMC honored its indemnity obligations. Whenever Crosby Valve was served in an asbestos personal injury action, FMC stepped in to defend Crosby Valve and to pay settlements and judgments incurred by Crosby Valve.

9. In 2012, TIL transferred Crosby Valve to Pentair. In the aftermath of that transaction, FMC is now refusing to honor the indemnity that it gave to Crosby Valve on the ground that the indemnity would be good only for so long as Crosby Valve remained an affiliate of TIL. In other words, FMC has taken the position that while TIL *acquired* Crosby Valve free-and-clear of asbestos liabilities, TIL could not *divest* Crosby Valve free-and-clear of such liabilities.

10. FMC's position contradicts the clear language of the merger agreement between FMC and TIL, the manifest intent of the parties, and common sense. Because FMC has persisted in its refusal, it is now necessary for Crosby Valve to bring this action for breach of contract and declaratory relief.

**The Merger and FMC's Indemnification Obligations**

11. FMC, through its wholly-owned subsidiary Moorco International, Inc. ("Moorco"), owned Crosby Valve until 1998, when ownership of Crosby Valve was transferred to TIL, through its wholly-owned subsidiary CV Holding Inc. ("CV Holding") in a merger transaction (the "Merger") involving a TIL subsidiary, T14 Acquisition Corporation ("T14").

12. FMC, Moorco, TIL, CV Holding, T14, and Crosby Valve were parties to an Agreement and Plan of Merger dated as of June 5, 1998 (the "Merger Agreement"). Pursuant to the

Merger Agreement, T14 was merged with and into Crosby Valve, as a result of which Crosby Valve became a subsidiary of TIL and CV Holding. In the Merger Agreement, TIL was referred to as the "Guarantor," CV Valve was referred to as "Tyco," Crosby Valve was referred to as the "Company," FMC Corporation was referred to as "FMC," and T14 was referred to as the "Merger Sub."

13. In the Merger Agreement, FMC agreed, among other things, to indemnify TIL, Crosby Valve (after closing), T14 and other "Affiliates" of TIL from certain liabilities. Specifically, Section 8.03(a) of the Merger Agreement, in relevant part, provides that:

> SECTION 8.03. INDEMNIFICATION. (a) Subject to Sections 8.01 and 8.02, FMC will indemnify, defend and hold harmless Guarantor and its Affiliates (excluding the Company prior to Closing) and their respective directors, officers, employees and representatives (collectively, "Tyco Indemnitees") from and against any and all claims, demands or suits (by any person or entity, including, without limitation, any Government Authority), losses, liabilities, damages, fines, penalties, obligations, payments, costs and expenses, paid or incurred, whether or not relating to, resulting from or arising out of any Third Party claim, including, without limitation, the costs and expenses of any and all actions, suits, proceedings, demands, assessments, judgments, settlements, and compromises relating thereto and reasonable attorneys' fees in connection therewith (collectively "Losses") … resulting from or arising out of any of the following:
>
> . . .
>
> (iv) any liability or amount incurred or suffered by any Tyco Indemnitee arising out of any Pre-Closing Claims. "Pre-Closing Claims" means the matters listed on Company Disclosure Schedule 3.10 and any other product liability[,] automobile liability, general liability, or employment liability (excluding workers' compensation) claim asserted against any of the Company, its subsidiaries or any of the FMC Subsidiaries with respect to occurrences prior to the Closing Date but only to the extent such liability was not reflected on the Closing Balance Sheet
>
> . . . .

14. Section 11.02(a) of the Merger Agreement defines "Affiliate" as "a person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the first mentioned person."

15. T14 and Crosby Valve were named parties to the Merger Agreement. At the time of the execution of the Merger Agreement, T14 was an Affiliate of TIL because it was a wholly owned subsidiary of TIL and thus was a "Tyco Indemnitee" entitled to indemnification from FMC pursuant to Section 8.03(a) of the Merger Agreement.

16. Section 11.08 of the Merger Agreement permitted the rights of T14 under the Merger Agreement to be assigned to any direct, wholly-owned subsidiary of TIL or CV Holding. Upon the closing of the Merger, T14 merged into Crosby Valve, remaining a direct, wholly-owned subsidiary of CV Holding. As provided in Section 2.03 of the Merger Agreement, at the effective time of the Merger, "the property, rights, privileges, powers and franchise of the Company and Merger Sub [T14] shall vest in the Surviving Corporation." Crosby Valve was the Surviving Corporation under the Merger Agreement. As the Surviving Corporation, Crosby Valve was assigned and succeeded to the rights of T14, including its rights as a "Tyco Indemnitee," under the Merger Agreement as a matter of law.

17. Moreover, Crosby Valve (as of the closing of the Merger) was a "Tyco Indemnitee" entitled to indemnification from FMC pursuant to Section 8.03(a) of the Merger Agreement.

**FMC Indemnifies Crosby Valve**

18. At the time of the execution of the Merger Agreement, Crosby Valve was the defendant in lawsuits alleging injuries from exposure to asbestos allegedly contained in Crosby Valve products. FMC disclosed these lawsuits in Schedule 3.10 to the Merger Agreement.

19. After the Merger, Crosby Valve continued (and continues) to be named as a defendant in lawsuits alleging injuries from exposure, that occurred before the Merger, to asbestos allegedly contained in Crosby Valve products ("Crosby Valve Claims"). Such Crosby Valve Claims constitute Pre-Closing Claims pursuant to Section 8.03(a) of the Merger Agreement.

20. Following the Merger, FMC indemnified Crosby Valve for claims alleging personal injury arising out of alleged exposure to asbestos contained in Crosby Valve products. FMC indemnified Crosby Valve for such Crosby Valve Claims pursuant to Section 8.03(a) of the Merger Agreement from the closing of the Merger in 1998 until (as further described below) October 31, 2013.

**The Pentair Transactions**

21. On March 27, 2012, TIL entered into an agreement with Tyco Flow Control International Ltd., a wholly-owned subsidiary of TIL, which was subsequently renamed Pentair Ltd. ("Pentair"), to spin-off Pentair to TIL's shareholders, and an agreement with Pentair and Pentair, Inc. to combine TIL's flow control business, which includes Crosby Valve and of which Pentair was the parent company, with Pentair, Inc. in a tax-free, all stock merger (the "Pentair Transactions").

22. The Pentair Transactions occurred in several steps over time. The spin-off of Pentair occurred on September 28, 2012.

**The Present Controversy**

23. After the Pentair Transactions, FMC informed Crosby Valve (and Pentair) that, as a result of the Pentair Transactions, FMC was now taking the position that it is no longer obligated to indemnify Crosby Valve under the Merger Agreement and that it would cease to do so.

24. Nothing in the Merger Agreement authorizes FMC to unilaterally withdraw its indemnification of any entity that qualified as an "Affiliate" at the time the Merger closed. In particular, nothing in the Merger Agreement conditions the indemnity of Affiliates on the ongoing and indefinite ownership of the Affiliate by Tyco, or suggests that the Affiliate would lose the benefit and protection of FMC's indemnity based solely on changes to its ownership structure. Similarly, nothing in the Merger Agreement precludes the transfer by Tyco of ownership of Crosby Valve to Pentair or to any other entity. The change in Crosby Valve's ownership does not relieve FMC of its indemnification obligations to Crosby Valve under the Merger Agreement. FMC's position is contrary to the language and intent of the Merger Agreement, is commercially and economically unreasonable and would precipitate absurd results. The Merger Agreement requires FMC to indemnify Crosby Valve, as a successor to the rights of T14 under the Merger Agreement, and as a named indemnitee as of the closing of the Merger, and as a TIL Affiliate.

25. On October 31, 2013, Crosby Valve and FMC entered into an Amended and Restated Standstill and Tolling Agreement (the "Standstill Agreement"). As of that date, FMC

{03021505.DOC / } 4821-0369-6918.5

7

ceased indemnifying Crosby Valve in accordance with and as required by the Merger Agreement.

26. Under the terms of the Standstill Agreement, Crosby Valve agreed, on an interim and provisional basis in order to facilitate a potential resolution of this dispute, to administer the defense of personal injury lawsuits asserting exposure to asbestos allegedly contained in a Crosby Valve product that were commenced and/or tendered to FMC, beginning on November 1, 2013. FMC agree to reimburse Crosby Valve for 50% of the expenses Crosby Valve incurred in administering, defending and resolving any Crosby Valve Claims. Crosby Valve, in turn, agreed to reimburse FMC for 50% of the defense costs that FMC incurred with respect to administration, defense and resolution of Crosby Valve claims between September 27, 2012 and October 31, 2013. All amounts advanced or paid by Crosby Valve under the Standstill Agreement were of a provisional nature, subject to a full reservation of rights. Under the Merger Agreement, Crosby Valve is not required to make any such payments and is entitled to full indemnification and reimbursement from FMC of all amounts so paid, plus interest.

27. Pursuant to the terms and conditions of the Standstill Agreement, Crosby Valve agreed to forbear from exercising its rights and remedies under the Merger Agreement for as long as the Standstill Agreement remained in effect.

28. The Standstill Agreement expired by its terms on September 30, 2014. Prior to its expiration, Crosby Valve requested that FMC further extend the Standstill Agreement but FMC refused. FMC has further informed Crosby Valve that, upon expiration of the Standstill Agreement, it will not resume responsibility for the administration, defense and resolution of Crosby Valve Claims, will not indemnify Crosby Valve for Crosby Valve

Claims as required by the Merger Agreement, and will not reimburse Crosby Valve for any past or future expenses incurred by Crosby Valve with respect to the administration, defense and resolution of Crosby Valve Claims. These actions constitute a breach and anticipatory repudiation of the Merger Agreement by FMC.

### COUNT ONE: BREACH OF CONTRACT

29. Crosby Valve realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

30. As the Surviving Corporation under the Merger Agreement, Crosby Valve was assigned and succeeded to the rights of T14, including its rights as a "Tyco Indemnitee," under the Merger Agreement as a matter of law. Crosby Valve has succeeded to all of T14's right, title and interest in the Merger Agreement and is the real party in interest entitled to enforce FMC's obligations thereunder.

31. Crosby Valve (as of the closing of the Merger) was also a "Tyco Indemnitee" entitled to indemnification from FMC pursuant to Section 8.03(a) of the Merger Agreement.

32. Crosby Valve has fully performed its obligations under the Merger Agreement. All conditions precedent, if any, to FMC's performance of its indemnification obligations under the Merger Agreement have been satisfied or waived.

33. FMC has breached the Merger Agreement by, among other things: (a) refusing and failing to fulfill its obligation to indemnify Crosby Valve for claims alleging personal injury arising out of alleged exposure to asbestos contained in Crosby Valve products pursuant to Section 8.03(a) of the Merger Agreement; (b) repudiating the Merger Agreement by refusing and failing to provide assurances of future performance with regard to its obligation to indemnify Crosby Valve pursuant to Section 8.03(a) of the

Merger Agreement; and (c) refusing and failing to indemnify and reimburse Crosby Valve for sums it has advanced and expended with respect to the administration, defense and resolution of Crosby Valve Claims.

34. As a direct and proximate result of FMC's material breaches, Crosby Valve has been damaged in an amount equal to the total of (a) all sums that Crosby Valve remitted to FMC to reimburse FMC for the defense costs, settlements, and awards paid between September 27, 2012 and October 31, 2013, pursuant to the Standstill Agreement; and (b) all sums that Crosby Valve has advanced for defense costs, settlements, and awards since November 1, 2013, plus other incidental damages, costs and pre-judgment interest.

35. The total amount of damages that Crosby Valve has sustained as a direct and proximate result of FMC's material breaches of the Merger Agreement substantially exceeds $75,000.00, exclusive of interest and costs. Additional damages continue to accrue as a direct and proximate result of FMC's breach, as a result of pending and to-be-filed Crosby Valve Claims.

### COUNT TWO: COMPLAINT FOR DECLARATORY RELIEF

36. Crosby Valve realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

37. A present and actual controversy exists with respect to the rights of Crosby Valve and the obligations of FMC with respect to the indemnification provisions of the Merger Agreement.

38. The Merger Agreement is a valid and binding contract between Crosby Valve, FMC and others that defines the parties' legal rights and responsibilities regarding, among other things, FMC's indemnification obligations.

39. Crosby Valve seeks a declaration that the Merger Agreement requires FMC to indemnify Crosby Valve for its Losses (as defined in the Merger Agreement), arising out of claims alleging injuries due to exposure to asbestos allegedly contained in Crosby Valve products, as provided in the Merger Agreement, and a declaration that the Pentair Transactions did not release, diminish or otherwise impair Crosby Valve's entitlement to indemnification from FMC under the Merger Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Crosby Valve demands judgment as follows:

A.     Declaring that FMC is required to indemnify Crosby Valve under the Merger Agreement;

B.     Awarding Crosby Valve all equitable and other relief necessary to effectuate the declaratory judgment;

C.     Awarding Crosby Valve compensatory damages in an amount not less than $75,000.00, exclusive of interest and costs, to be fully determined at trial, plus other incidental damages and pre-judgment interest; and

D.     Awarding Crosby Valve all costs, disbursements, and attorneys' fees as permitted by law.

Dated:  October 1, 2014

NAMAN HOWELL SMITH & LEE, PLLC

By: *[signature]*
J. K. Leonard
ATTORNEY-IN-CHARGE
Southern District ID 18357
Texas State Bar No 12209750
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Tel:  (210) 731-6358
FAX: (210) 785-2958
jkleonard@namanhowell.com

**OF COUNSEL:**
Andrew J. Wronski
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306
414.297.7338  Telephone
414.297.4900  Facsimile
awronski@foley.com
*Attorneys for Plaintiff Crosby Valve, LLC*

{03021505.DOC / }  4821-0369-6918.5